RICHARD WILLIAMSON, President of the Bull's Head Bank *v.* JOHN T. MILLS.

A dealer with a bank, upon effecting with it a call loan, lodged, as collateral security for its repayment, notes endorsed by the defendant. On the loan being called in, the cashier of the bank, acting under the impression that the amount on deposit by the dealer was sufficient to cover the sum owing, delivered the securities to the dealer, who returned them to the defendant. Afterwards, upon the cashier requesting their return, they were obtained from the defendant, who, at the time of giving them up to the dealer, said he might take them back to place matters just where they were when they were given up to him by the bank.

It appearing that the loan had not been paid, *held,* in an action afterwards brought by the bank against the defendant as endorser on the notes thus lodged as collateral, that the mere charge of the loan in the dealer's account, in the absence of proof that the amount on deposit was sufficient to cover the charge, was not such an act as operated to discharge the defendant from liability as endorser upon the collateral notes; and, although they had been at one time delivered up to the defendant, yet their return to the bank, under the circumstances shown, revived the original liability of the defendant as endorser, and the bank was therefore entitled to recover. BRADY, J., *dissenting.*

APPEAL from a judgment of the general term of the Marine

Williamson v. Mills.

Court. The action was brought against the defendant as endorser of a note for $200, made by one James Pelton.

It appeared that Jacob D. Mills, a brother of the defendant, applied to the plaintiffs for a loan of $500. The president of the plaintiffs told him to get the defendant's name as collateral, and the bank would make the loan. Jacob D. Mills thereupon applied to his brother, the defendant, who gave him the note in suit, endorsing it, together with two others, amounting in all to $400; and also gave him his own note for $100, thus making up the $500 applied for. The bank made the loan to Jacob D. Mills, upon call, receiving the four notes as collateral security for its repayment.

Jacob D. Mills was a depositor with the bank, and, during the time he had the loan, continued to make deposits. On June 2d, 1855, he called at the bank, having then on deposit about $406, when the cashier informed him that the loan had been charged to him, and directed one of the clerks to give him up the collaterals. The cashier testified that they were given up on the promise, by Jacob D. Mills, to raise the money and pay the loan. The collaterals thus given up to Jacob D. Mills were by him returned to the defendant. A few days after this occurrence, however, the cashier requested Jacob D. Mills to return to the bank the notes so previously given up to him. Upon his application to the defendant for them, they were again delivered to him, the defendant saying, at the time, that he might take them back to place matters just where they were when the notes were given up to him. The notes were returned accordingly.

The justice rendered judgment in favor of the plaintiffs, which was affirmed by the general term of the Marine Court, and from the judgment of affirmance the defendant appealed to this court.

*Chas. B. Hart*, for the appellant.

*Benj. T. Kissam*, for the respondent.

DALY, J.—It appears, by the defendant's own showing, that

when the bank charged the loan on the $500 note against the account of Jacob Mills, that Jacob had not funds in bank sufficient to pay it. Charging it against Jacob's account, therefore, could not operate as a payment of the loan unless the bank so intended. That they did not so intend, is evident from their demanding the return of the securities withdrawn by Jacob Mills, and that the defendant concurred in these views appears by his returning the securities to them. If it could be gathered, from the testimony, that the $406 which Jacob had on deposit, had been applied by the bank on the $500 loan, then the indebtedness on that loan would be reduced to $94, and, as the bank, on the 21st of June, discounted the collaterals for the benefit of Jacob Mills, it might be inferred that they meant to look to him for the $94, and not to rely upon the collaterals as a security for its payment. But, for all that appears in the testimony of Jacob Mills, he may have drawn from the bank all that he had upon deposit. The cashier of the bank swears positively that the $500 note has not been paid, and Jacob Mills does not swear that it has been. The extent of his testimony is that he had $406 on deposit when the note was charged, and it is to be presumed that if he left that sum in the bank, and has not withdrawn it, he would have said so. To rebut the positive statement of the cashier that the loan had not been paid, it was incumbent upon the defendant to have shown, by the testimony of Jacob Mills, that Jacob had never withdrawn the $406, but left it to be applied by the bank towards the payment of the loan. If he had shown this, then the fact that the bank had charged the loan against the account of Jacob, and that they had realized $106.54 upon the collaterals, which together was more than the $500 note, it would have warranted the conclusion that the bank had been paid the loan for which the collaterals were security, and that the defendant was not liable to them upon the note in suit. The subsequent discounting of the collaterals by the bank, for the benefit of Jacob, was a strong circumstance to show that they regarded the $500 note as paid; that, by making a new loan upon them, they no longer held them as security for the former loan; but it

was not enough, in the absence of certain and positive evidence that the $406 had gone to the use of the bank. This the defendant could easily have shown; and, as he did not, the presumption is to be taken against him.

I think the judgment should be affirmed.

INGRAHAM, First Judge, concurred.

BRADY, J., (dissenting).—The cashier of the bank states that the collaterals were delivered to the depositer, Jacob, *in consideration* of a promise by him to raise the money and pay the loan of $500. On his cross-examination, he states that he does not recollect the conversation, nor the substance of it, when the notes were given up. Jacob states that at a time when he had a balance of about $406 in the bank, he called there, and was informed by the cashier that the loan of $500 had been charged to him, and was then and there given the collaterals, and that he returned them to the defendant. Jacob was not asked, on cross-examination, whether he had not received the collaterals on a promise to raise and pay the loan of $500; nor was he interrogated by the plaintiffs at all on that subject. It is therefore clear, on his statement, that no condition was annexed to the delivery of the collaterals, while on the part of the cashier it appears that he has no recollection of the conversation, nor its substance, which took place on that occasion. He is certain, he states, however, that Jacob promised to raise the money, and that this was the consideration of giving the notes up to him. I have no hesitation to say, in reference to that branch of the case, that I consider the testimony of the cashier wholly unsatisfactory and insufficient. It would be a very dangerous precedent to give greater weight to a vague and fragmentary statement of a conversation, than to the positive, distinct statement of a participant therein. It is my opinion, therefore, that the testimony shows conclusively that when the collaterals were given up, the loan had been charged to Jacob, and that the collaterals were handed to him without condition or qualification. This is sustained by the statement of the cashier as to the custom of the bank: "We

charge notes sometimes when we have securities. When we charge a note, and there is money to pay it to the debtor's credit in the bank, we give up the collaterals; but if there is no money, then we hold on to the collaterals. That is our invariable rule." It must be remembered, in this connection, that some days before the loan was charged to the debtor, the bank had called upon him for payment, which he had not made, although he continued to make deposits after the loan. No other conclusion can be reasonably drawn, from the cashier's statement of the rule of the bank, than that, when the debtor to whom a loan has been made, has any funds in the bank, and the loan is charged to his credit, it is an application of such funds to the payment of the loan. It nowhere appears that Jacob objected to such application. The bank never charges the loan when there is *no* money to the debtor's credit, and it follows, as a necessary conclusion, that when they do, there *is* money in the bank, which is, by that act, appropriated. I think, for these reasons, that, as between the defendant and the bank, it is proved that the former was discharged to the amount of $406. It is no answer, in my opinion, to this proposition, that the collaterals were returned. They had accomplished the object of their deposit, and no new agreement was made with the defendant. Jacob told him that he did not want the cashier to think he had done or intended anything wrong in taking the notes away, and wished to restore them with that end in view. The cashier wanted the notes back, and the reason is obvious. There was a balance due of $94 on the loan, and he was in fact entitled to the possession of them until that was paid, and Jacob did not intend to deprive the bank of that right. That would account for his desire that the cashier should not think he intended any wrong.

It does not appear, as a distinct fact, that the balance of $406 was ever drawn from the bank. The defendant was not bound to prove it. That was a burden upon the bank, and the defendant would then have had the right to show the circumstances under which the payment was made. It certainly cannot preju-

dice the defendant's rights, that he did not prove a material fact which might operate against him, when he put upon the stand a witness who could have stated it on cross-examination.   If charging the loan was not an idle ceremony, then the defendant had no right to check against his balance.   If it was, then the bank violated an invariable rule, and must take the consequences.   I do not think this case differs, in principle, from the case of *The Bank of Salina* v. *Babcock* (21 Wend. 499,) where the bank system of charging against deposits is considered and passed upon in reference to the facts there developed.   I think the judgment is wrong, and should be reversed.

Judgment affirmed.


There was also a suit brought in this court some time previous, by the bank, against John T. Mills, on the note for $100 made by Mills, and which was the fourth of the collaterals given by Jacob D. on procuring the loan above-mentioned.   This action was tried before Judge INGRAHAM, without a jury, who, in rendering judgment in favor of the bank, gave the following opinion :

" Without passing upon the question of veracity between the witness for the defendant and the clerk of the bank, I am of the opinion that the plaintiffs are entitled to recover, because the defendant agreed to return the collateral notes to the bank to be placed in the same situation in which they were when given up by the clerk.   The mere fact of charging the amount to the account of Mills did not relieve the collateral security, and the return of the notes to the bank placed them under the same liability that existed when they were given up.   It is not shown that the claim was ever discharged, and my conclusion is that the defendant is liable."

The evidence on both trials corresponded substantially, though differing slightly in details.   It appeared, in this case, that after the loan had been charged, and the collaterals given up, the bank had paid Jacob D. Mills' check for $400 ; also, the amount of Ja-

cob D. Mills' deposit on the 2d of June was stated, in the second case, to be $457.77 instead of $406.

On appeal from the judgment of Judge INGRAHAM, it was affirmed by the general term, (December, 1857), the opinion of the court being merely to the effect that the case did not differ essentially from that in the Marine Court, and that the judgment must be affirmed for the reasons assigned for affirming the judgment in the latter cause.

The appellant afterwards moved for a re-hearing, on the ground that there were differences in the evidence adduced on the two trials, which distinguished the cause in this court from the other. When the cases were originally decided, in Dec., 1857, the court was composed of INGRAHAM, First Judge, and DALY and BRADY, Associate Judges. Upon the motion for re-argument, the members of the court were DALY, First Judge, and BRADY and HILTON, Associates. The questions therefore were substantially twice determined by the court; and, on the motion, its decision was given in the following opinion :

By the Court, DALY, First Judge.—After carefully reperusing this case, I see nothing that would justify the ordering of a re-argument. The grounds upon which the appeal in the action in the Marine Court were decided, are in my judgment equally applicable to this case. The difference in the facts between the two cases are immaterial. They would not vary the ground upon which our decision was founded. That is, that the return of the notes by the concurrent act of both defendants with the understanding that matters should be placed just where they were when the notes were given up, showed that they had been given up by the clerk of the bank by mistake. That it was shown by the acts and admissions of all parties that the collaterals were to be retained by the bank as security, and, under such circumstances, the charging of the call loan to the account of J. Doremus Mills did not discharge the collaterals.

Motion for re-argument denied, with costs.